UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-297-H

MILTON PEACOCK, et al.                                                          PLAINTIFFS

V.

DAMON CORPORATION, et al.                                                    DEFENDANTS

**MEMORANDUM OPINION**

Milton and June Peacock (the "Peacocks") and J&M Tracks, LLC ("J&M Tracks") (collectively "Plaintiffs") assert violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 - 2312 ("Magnuson-Moss") and the Kentucky Consumer Protection Act ("KCPA"); breach of express and implied warranties; and breach of duty of good faith pursuant to the Uniform Commercial Code against Damon Corporation ("Damon") and MCS Enterprises LLC d/b/a Tinker's Toys Dixie RV ("Tinker's Toys") (collectively "Defendants").  Defendants have in turn filed motion for summary judgment, seeking to dismiss all these claims.

I.

The events here unfolded in an unusual manner.  But the facts actually necessary to resolve this motion allow for a fairly straightforward analysis.

On June 21, 2003, the Peacocks attended a recreational vehicle rally at the Kentucky State Fairgrounds in Louisville, Kentucky.  They visited the Tinker's Toys' display and decided to purchase a new 2004 LX 400 Damon Escaper RV from Tinker's Toys, for a total cost of

$233,000.00.[1] At the same time, Marshall Smith, owner of Tinker's Toys, suggested that the Peacocks form a corporation to save sales tax on the purchase. Smith then introduced them to a representative of Action Service, LLC, to help them do that.

On June 30, 2003, the Peacocks finalized their RV purchase on June 30, 2003. June Peacock wrote two personal checks to Tinker's Toys totaling $113,000.00, and the Peacocks traded in their previous RV to offset the purchase price. On that same date, Smith created the first Purchase Agreement which listed the Peacocks as the purchasers. In the meantime, the Peacocks, with the assistance of Action Services, established J&M Tracks, LLC, a Montana corporation, for the sole purpose of holding title to the vehicle. The organization date of the corporation was July 2, 2003. June Peacock is the president and sole member of J&M Tracks. Thereafter, Smith created a second, corrected Purchase Agreement, which listed J&M Tracks as purchaser. The Certificate of Origin of the RV also lists J&M Tracks as the direct transferee from Tinker's Toys.

Shortly after taking possession of the RV, the Peacocks experienced a series of problems, including water leakage, difficulty steering, and a loose front windshield. Damon's limited express warranty covered the RV and extended to the purchaser of the vehicle via the owner's manual. The limited warranty covered one year or 12,000 miles. The Peacocks returned the RV to Tinker's Toys for warranty repairs twice in the summer of 2003. They continued to experience problems during the fall of 2003, and returned it for repairs on November 10, 2003. After two months of repairs, Defendants returned the vehicle. On January 7, 2004, at Plaintiffs' request, they extended the one year warranty of the vehicle.

---

[1] Damon manufactured the vehicle in question.

At the end of August 2004, June Peacock contacted Damon with additional concerns, and demanded that Damon make all repairs within 60 days. Damon took possession in early September 2004 to begin additional repairs. By January 2005, the Peacocks had received no information regarding the status of those repairs. By letters dated January 31, 2005 and February 1, 2005, Plaintiffs notified Defendants of their intention to revoke acceptance, cancel the sale, and demand a refund. On February 16, 2005, a representative of Damon delivered the RV to the Peacocks' home. On May 18, 2005, Plaintiffs commenced this litigation.

All discovery is now complete. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, the evidence before the Court must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).

II.

Several of the issues facing the Court on summary judgment depend on whether the Peacocks themselves directly purchased the RV and then transferred it to J&M Tracks, or whether J&M Tracks was the initial and only owner of the RV. The answer to this question will determine which parties have actual standing to bring any of the substantive claims here. The known facts present a somewhat confusing sequence of events. J&M Tracks did not in fact exist as a corporation until July 2, 2003–two days after Tinker's Toys transferred title to the RV. Furthermore, the operating agreement of J&M Tracks states that the Vehicle became an asset of J&M Tracks on or about August 1, 2003, a full month after the initial sale. Ultimately, this

question does not allow for a completely satisfactory answer.

Kentucky is a title ownership state and has enacted a comprehensive statutory scheme governing the transfer of motor vehicles. According to K.R.S. § 186.010(7)(c), a licensed motor vehicle dealer (like Tinker's Toys) must fulfill two requirements to transfer ownership of a vehicle: (1) transfer of physical possession of a motor vehicle to the purchaser pursuant to a bona fide sale and (2) compliance with the requirements of K.R.S. § 186A.220. That statute requires, in relevant part, that when the dealer "assigns the vehicle to a purchaser for use, he shall deliver the *properly assigned* certificate of title, and other documents if appropriate, to such purchaser, who shall make application for registration and a certificate of title thereon." K.R.S. § 186A.220 (emphasis added).

Under the standard of K.R.S. § 186A.220, the Defendants' contention that the June 30, 2003 transfer constituted a sale to Milton and June Peacock in their individual capacities simply cannot stand. The statute requires that transfers be made via a *properly assigned* certificate of title. The valid execution of the necessary documents appears to be an absolute prerequisite to any lawful transfer of ownership. *See Kelly v. McFarland*, 243 F.Supp.2d 715, 719 (E.D. Ky. 2001) (citing *Nantz v. Lexington Lincoln Mercury Subaru*, 947 S.W.2d 36, 37, 44; 7 Ky. L. Summary 21 (Ky. 1997)). Without a proper assignment by the necessary paperwork, no provision of the statute allows for such a transfer to default to the party who pays for the vehicle, or to any other party. Defendants cite no compelling law to the contrary. Defendants argue that June Peacock was acting "under the assumed name of J&M Tracks, but in her individual capacity" when the vehicle was purchased. However, such a theory is contrary to the title documents that control the transfer under Kentucky law. According to the standards of K.R.S. §

186.010(7)(c) and K.R.S. § 186A.220, no transfer to the Peacocks in their individual capacity could have occurred.

There remain only two possibilities: that the transfer from Tinker's Toys did not occur at all, or that Tinker's Toys sold the RV directly to J&M Tracks. No party contends the former: clearly at least a partial transfer of some sort did occur. Therefore, only one possibility remains: that the June 30, 2003 transfer satisfied only the first portion of the requirements of K.R.S. § 186.010(7)(c), and that the July 2, 2003 creation of J&M Tracks allowed the statutory requirements of K.R.S. § 186A.220 to be properly satisfied on that date. This result is not entirely satisfying. Nevertheless, it is the most logical of all possibilities.

The transfer of title to the new corporation does meet the bare requirements of K.R.S. 186.010, whereas any other scenario does not. The Court finds some support for its analysis in *Kelly v. McFarland*, even though it involved a different issue--insurance coverage. In *Kelly*, the dealership in question transferred the physical possession of a vehicle to the Kellys (the purchaser of the vehicle in question), but because the dealership's "title clerk" was not available, the necessary paperwork was not properly filed until approximately a week after the transfer of physical possession. *Kelly*, 243 F.Supp.2d at 716. In *Kelly*, Judge Wilhoit ruled that under Kentucky law, no transfer of *legal* title occurred until the completed paperwork was actually filed a week after the transfer of physical possession. *Id.* at 718. During the week-long interim period, the court ruled that the dealership remained the legal owner of the vehicle. *Id.* The same logic supports this Court's conclusions because the purpose of K.R.S. § 186.010(7)(c) and K.R.S. § 186A.220 is the same in *Kelly* as here: these statutes are designed to "clearly denote[] the moment of transfer of title [which] is crucial to adjudicating claims such as this where the

5

precise sequence of events is crucial to resolving the claim." *Kelly*, 243 F.Supp.2d at 719.

This Court concludes that as a matter of law the transfer of physical possession on June 30, 2003 and the validation of the title documents by the organization of J&M Tracks on July 2, 2003, combined to transfer legal title *directly* from Tinker's Toys to J&M Tracks.  While the Operating Agreement of J&M Tracks states that the RV became an asset of J&M Tracks on August 1, 2003, that document is irrelevant under Kentucky's comprehensive statutory framework.  That framework dictates that J&M Tracks became the owner of the vehicle on July 2, 2003.  Consequently, J&M Tracks is entitled to assert all those claims requiring privity, including those under the Magnuson-Moss Warranty Act and under the Kentucky Consumer Protection Act.

### III.

One would assume that because J&M Tracks are deemed the legal owners of the RV, the Peacocks may no longer pursue their individual claims.  However, the Peacocks assert standing as third-party beneficiaries to the contract between Tinker's Toys and J&M Tracks.  This suggestion requires some consideration.

The Kentucky courts have held that in order for a third person to derive a benefit from a contract between two other parties, it must appear that "the contract was made and entered into directly or primarily for the benefit of such third person." *Long v. Reiss*, 160 S.W.2d 668, 674 (Ky. 1942).  Parties for whom third-party beneficiary contracts are made fall into two classes: donee beneficiaries and creditor beneficiaries. *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985).  These two classes of beneficiaries have been described under Kentucky law as follows:

> One is a donee beneficiary if the purpose of the promisee in buying the promise is to make a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary. Any others who may incidentally benefit from a contract are no more than incidental beneficiaries with no enforceable rights under the contract.

*King v. National Industries, Inc.*, 512 F.2d 29, 33 (6th Cir. 1975).

The Restatement (Second) of Contracts has also long been relied upon by Kentucky courts when addressing third-party beneficiary issues. *See, e.g., Stevens v. Stevens*, 798 S.W.2d 136, 139 (Ky. 1990) (applying § 305); *United States v. Wood*, 877 F.2d 453, 459 (6th Cir. 1989) (Kentucky would apply § 311). In addressing donee beneficiaries, the Restatement (Second) of Contracts § 302 states:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . .
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302.

Clearly, the Peacocks do not qualify as creditor beneficiaries of the contract between Tinker's Toys and J&M Tracks. The question whether they were donee beneficiaries is more subtle. Here, one of the promises of the contract at issue is the delivery of the RV to J&M Tracks. The promisor is Tinker's Toys, and the promisee is J&M Tracks. The circumstances arguably indicate that the promisee (J&M Tracks) intended to give the beneficiaries (the Peacocks individually) the benefit of the promised performance (i.e. the use of the RV after its delivery to J&M Tracks). However, that benefit was the <u>exact same</u> benefit that J&M Tracks derived from the contract: use and possession of the RV. J&M Tracks was not making a gift of

possession and use of the RV to the Peacocks individually, because J&M Tracks was to remain the title owner and user of the vehicle. Furthermore, it would strain the logic of § 302 to conclude that the Peacocks individually paid for an RV as a "gift" to themselves via the entity of J&M Tracks.

Therefore, the Court concludes that the Peacocks were not third-party beneficiaries to the contract between J&M Tracks and Tinker's Toys, and thus lack standing in their individual capacities to maintain any of the claims in this case.

IV.

The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 - 2312 is a multifaceted federal act addressing warranties. Among other provisions, the Act imposes federal minimum standards for written warranties, including remedying the product without charge and within a reasonable time in the case of defect or malfunction, 15 U.S.C. § 2304(a)(1); allows the consumer to seek a refund or replacement from the warrantor after a reasonable number of repair attempts by the warrantor, 15 U.S.C. § 2304(a)(4); and allows limitations on the duration of implied warranties, 15 U.S.C. § 2308(b). Thus, to a great extent its substantive elements mirror those required for state law warranty claims. However, those who succeed have a larger array of remedies available. For instance, successful litigants under the Magnuson-Moss are entitled to damages and other legal and equitable relief. 15 U.S.C. § 2310(d)(1). They may also recover costs and expenses, including attorney's fees. 15 U.S.C. § 2310(d)(2).

A.

The Court must first address the effect of Defendants' written limited warranty provision. Defendants' written warranty states in pertinent parts:

The RV owner shall give written notice to Damon at the above address, or one of its authorized, independent dealers, of any claimed defect within fifteen (15) days after it is or should have been discovered.  Any action to enforce the terms of Damon's Limited Warranty shall be commenced not more than six (6) months after the date notice is given.

LIMITATION AND DISCLAIMER OF IMPLIED WARRANTIES

DAMON EXPRESSLY LIMITS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND OTHER IMPLIED WARRANTIES APPLICABLE TO THIS RV TO THE DURATION OF DAMON'S EXPRESS WRITTEN LIMITED WARRANTY ONE (1) YEAR OR TWELVE THOUSAND (12,000) MILES, BEGINNING ON THE FIRST DATE THAT EITHER THE RV IS TENDERED TO THE FIRST RETAIL PURCHASER, OR THE DATE THAT THE RV IS FIRST PLACED IN SERVICE BY THE DEALER FOR PERSONAL USE PRIOR TO SALE AT RETAIL.  PERFORMANCE OF REPAIRS OR NEEDED ADJUSTMENTS IS THE EXCLUSIVE REMEDY UNDER THIS WRITTEN LIMITED WARRANTY OR ANY IMPLIED WARRANTY.  DAMON SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST WAGES, PAYMENTS ON ANY INSTALLMENT RETAIL LOAN, OR VEHICLE RENTAL EXPENSES) RESULTING FROM BREACH OF THIS WRITTEN LIMITED WARRANTY OR ANY IMPLIED WARRANTY.

Some states do not allow limitations on how long an implied warranty will last or the exclusion or limitations of incidental or consequential damages, so the above limitations may not apply to you.

Damon makes no warranty or other representation with respect to the condition of the RV beyond that contained in this warranty.  Any opinions or representations contained in any promotional literature with respect to the RV or any other Damon product are strictly the opinion of Damon, and do not constitute a warranty of any kind, including any warranty of performance or quality.  No person, including without limitation any independent, authorized dealer, has the authority to enlarge, amend, or modify this Limited Warranty.

>            THIS LIMITED WARRANTY GIVES YOU SPECIFIC LEGAL
>            RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS
>            THAT VARY FROM STATE TO STATE.

Defendants argue that they properly disclaimed all warranties–express or implied–via the text of Damon's Limited Warranty and via the Purchase Order between Tinker's Toys and L&M Tracks.  Plaintiffs respond that the plain language of the Damon Limited Warranty limits the *duration* and *remedies* available to purchasers, but does not *specifically disclaim* any implied warranties.  Plaintiffs also assert that the Magnuson-Moss forbids the disclaiming of implied warranties altogether.

The Court concludes that Defendants' Limited Warranty is proper in scope and effect. K.R.S. § 355.2-316 permits sellers to modify the implied warranty of merchantability or the implied warranty of fitness for a particular purpose via a conspicuous writing.  K.R.S. § 355.2-316(2).  Magnuson-Moss similarly permits sellers to restrict the duration of implied warranties. 15 U.S.C. § 2308 (b).  The language of the Damon Limited Warranty clearly does not *disclaim* all implied warranties, but it does effectively and legally limit their *duration* to that of the Limited Warranty.

The only remaining question is whether the Limited Warranty's language can limit the *remedies* under the implied warranties.  Although Kentucky law permits modification of remedies available under implied warranties via a conspicuous writing, K.R.S. § 355.2-316(2), Magnuson-Moss does not.  15 U.S.C. § 2308.  Therefore, the Court concludes that the implied warranties of merchantability and fitness for a particular purpose remain, although their duration was properly limited to the duration of Damon's Limited Warranty.

Kentucky courts have held that a limited warranty fails of its essential purpose whenever

"the warrantor fails to correct the defect within a *reasonable* period." *Ford Motor Co. v. Mayes*, 575 S.W.2d 480 (Ky. Ct. App. 1979) (emphasis added). Revocation of acceptance is then allowed under certain circumstances, as the court in *Mayes* indicated. *Id.* at 484. Since the parties vigorously dispute the circumstances surrounding the final return of the RV to Damon for repair and the reasonableness thereof, the Court denies summary judgment on the revocation of acceptance and the Magnuson-Moss Warranty Act. The reasonableness of the repair process as described to the Court appears to be the only issue for the jury under the warranty and Magnuson-Moss claims.

B.

The parties raise several other issues related to the warranty claims. Defendants argue that J&M Tracks either waived or failed to timely raise claims pursuant to the limited warranty, and that J&M Tracks never attempted to revoke acceptance or reject the vehicle. It strains credulity to suggest that Tinker's Toys, having suggested that the Peacocks set up a corporation in the first place and then having filled out the RV's title paperwork in the name of J&M Tracks, would then be unaware that June Peacock's continued communications could have been on behalf of the corporation that owned the RV.

Plaintiff seeks to make express warranty claims from some of Defendants' oral statements during the sales discussions. A seller's opinion or commendation of goods does not, on its own, create a warranty. *See, e.g., Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982). Under Kentucky law, the test for whether an express warranty exists is "whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may be

11

expected to have an opinion and exercise a judgment." *Wedding v. Duncan*, 220 S.W.2d 564, 567 (Ky. 1949). The alleged statements made here do not meet the *Wedding* test, and thus do no rise to the level of express warranties. Therefore, the Court concludes that the statements allegedly made to the Peacocks in the course of the sales process were mere puffery, or statements of opinion made by representatives of Tinker's Toys, as opposed to express warranties.

V.

The Court turns next to Plaintiffs' claims under the Kentucky Consumer Protection Act, K.R.S. § 367.170. The KCPA claim will rely upon much of the same evidence relevant for the Magnuson-Moss and warranty claims. However, the elements are slightly different, making the standard of proof somewhat higher. To prove a KCPA violation, Plaintiff must show "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." K.R.S. § 367.170(1). The statute specifically indicates that under its provisions, "unfair shall be construed to be mean unconscionable." K.R.S. § 367.170(2). Kentucky courts have asserted that the language of the KCPA is broad and that the terms "false, misleading and deceptive have meanings which are generally well understood by those who want to understand them." *Dare to Be Great, Inc. v. Commonwealth*, 511 S.W.2d 224, 227 (Ky. 1976).

Defendants read too narrowly *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287 (Ky. 1991). That decision interpreted the KCPA to allow recovery not merely for "simple incompetent performance of contractual duties" but instead when "some element of intentional or grossly negligent conduct is also present." *Id.* at 291. Defendants assert that Plaintiffs must allege gross negligence or intentional conduct to perfect a KCPA claim. However, the

Kentucky Court of Appeals has held that a seller may act "unconscionably" and thus unfairly, violating the KCPA, when the only remedy provided by that seller fails of its purpose. *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 486 (Ky. Ct. App. 1978). Whether Damon's Limited Warranty failed of its essential purpose is hotly disputed. Thus, Plaintiffs' KCPA claim is not ripe for summary judgment.

Finally, Defendants make the unpersuasive argument that L&M Tracks purchased the RV for commercial purposes, and that thus the Limited Warranty is invalidated and the KCPA claim fails. The cases Defendants cite involve the purchase of herbicide for a farm and the purchase of farm equipment by a dealer from a manufacturer. *Gooch v. E.I. Dupont de Nemour & Co.,* 40 F. Supp.2d 857 (W.D. Ky. 1998); *Hunter Enter., Inc. v. John Deere Indust. Equip. Co.*, 18 F. Supp.2d 697 (W.D. Ky. 1997). Neither concerns the circumstances here, where individuals set up a corporation for tax reasons to purchase a vehicle, but then used the vehicle for plainly personal purposes as contemplated by the KCPA. Furthermore, the Court again finds disingenuous the proposition that Tinker's Toys would advise would-be purchasers to set up a corporation for tax purposes but not advise these same would-be purchasers of any consequences under the Limited Warranty or KCPA. That the Peacocks used the RV "for commercial purposes" appears unlikely as described in both the Limited Warranty and the KCPA. This Court therefore finds as a matter of law that L&M Tracks did not use the RV for commercial purposes.

## VI.

Two claims remain for review. K.R.S. § 355.1-203 does impose an obligation of good faith in the performance of any contract or duty within the Kentucky Uniform Commercial

Code. However, it does not create an independent cause of action. Several federal courts have found that no such cause of action exists, and this Court agrees with their reasoning. *Advancemed, LLC v. Pitney Bowes Credit Corp.*, No. 05-464, 2006 WL 1007467 at *3 (E.D. Ky., Apr. 17, 2006); *Ennes v. H&R Block Eastern Tax Service*, No. 301-447-H, 2002 WL 226345 at *4 (W.D. Ky., Jan. 11, 2002). Therefore, Plaintiffs' independent claim for breach of good faith is dismissed.

Defendants also assert that Plaintiffs are not entitled to mental suffering or emotional distress damages. Kentucky courts have been clear that these types of damages are not recoverable under a contract-type cause of action. *See, e.g., Combs v. Southern Bell Tel. & Tel. Co.*, 38 S.W.2d 3, 5; 238 Ky. 341, 345-46 (Ky. 1931). Plaintiffs cite no persuasive authority to the contrary. No Kentucky court has concluded that the KCPA entitles plaintiffs to mental suffering or emotional distress damages. This Court declines to do so now.

The Court will enter an Order consistent with this Memorandum Opinion.

cc:     Counsel of Record